IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CAROLYN E. HILL,

       Plaintiff,

vs.                                  CASE NO. 1:12-cv-250-MP-GRJ

CAROLYN COLVIN,[1]
Commissioner of Social Security

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 13, 14.) For the reasons discussed below, it is recommended that the Commissioner's decision should be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits on May 12, 2010, and an application for supplemental security income on May 7, 2010, alleging a disability onset date of May 2, 2008 due to deteriorating bones. (R. 59-60, 114-119, 120-124.) These applications were denied initially on September 17, 2010, and upon

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this case.

reconsideration on November 12, 2010. (R. 65-67, 68-71.) Following a hearing on July 14, 2011, an administrative law judge ("ALJ") issued a decision on August 10, 2011 unfavorable to Plaintiff. (R. 25-32.) The Appeals Council denied Plaintiff's request for review on August 2, 2012. (R. 7-10.) Plaintiff sought review in this Court. (Doc. 1.)

## II.  FINDINGS OF THE ALJ

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (R. 27.) He further determined that Plaintiff had not engaged in substantial gainful activity since May 2, 2008. (R. 27.) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and obesity. (R. 27.) The ALJ went on to find at step three of the sequential evaluation that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 28.)

With respect to Plaintiff's residual functional capacity at step four of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b), including the capability of lifting and carrying twenty pounds occasionally and ten pounds frequently, and sitting, standing, and walking up to six hours in an eight-hour workday. (R. 28.) However, the ALJ limited Plaintiff to only occasional postural motions, including climbing stairs, balancing, stooping, kneeling, and crouching. The ALJ further found that Plaintiff should avoid climbing ladders, ropes, and scaffolds and crawling and avoid concentrated exposure to vibrations and hazards such as machinery and heights. The Plaintiff was allowed to use a cane. (R. 28.) The ALJ concluded that

Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they conflicted with the ALJ's RFC assessment.  (R. 31.)  The ALJ noted that his RFC was supported by the objective evidence of record and the state agency physician's opinion, and that none of Plaintiff's treating physicians had opined that she had disabling limitations.  (R. 31.)

The ALJ concluded at step four that Plaintiff was capable of performing her past relevant work as a small parts assembler as actually and generally performed, and production manager as generally performed.  (R. 31.)   The ALJ thus concluded that Plaintiff had not been under a disability at any time from May 2, 2008, through the date of his decision.  (R. 32.)

### III.  <u>ISSUES PRESENTED</u>

Plaintiff argues that (1) the ALJ failed to develop the record because he made no attempt to clarify Dr. Nagoshi's opinion with regard to Plaintiff's function by function limitations; (2) the ALJ erred in determining Plaintiff's RFC by affording "some weight" to the opinion of the State Agency medical consultant Dr. Krishnamurthy; (3) the ALJ erred by failing to make proper credibility findings as to Plaintiff's testimony; and (4) the ALJ erred at Step 4 in finding that Plaintiff has the ability to perform her past work as a small part assembler, house cleaner, and production manager.  (Doc. 1.) Thus, the Court must determine whether the ALJ adequately developed the record; whether the ALJ's assessment of her RFC is supported by substantial evidence; whether the ALJ's

evaluation of Plaintiff's subjective complaints comports with the Eleventh Circuit pain standard; and whether the ALJ's determination that Plaintiff can perform her past relevant work is supported by substantial evidence.

## IV.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4]  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## V.  SUMMARY OF THE RECORD

### A.  Medical History

Plaintiff received primary care from Dr. Ying Lu Nagoshi at Shands at UF Clinic Internal Medicine Tower Hill.  Dr. Nagoshi saw Plaintiff on May 13, 2008, for Plaintiff's complaints of low back pain, pain in her neck that radiated into her shoulders, episodes of vomiting, and heavy menses including iron-deficiency anemia.  (R. 235.)  Dr. Nagoshi noted that "[g]iven all the medical problems, she [Plaintiff] feels she could not really

---

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

continue to work," but she had child support and so she could afford to take a year of absence from working in order to get her health back together. (R. 235.)   Dr. Nagoshi referred Plaintiff to the SpineCare Center at Orthopedics to see if an epidural injection would be helpful for her pain.  Dr. Nagoshi increased Plaintiff's Lortab prescription. (R. 236.)  Plaintiff was also instructed to follow up with OB/GYN and Hematology for problems with heavy menses and anemia.  (R. 236.)

Plaintiff saw Dr. Nagoshi again on March 13, 2009 for an urgent visit concerning her headache, nausea, and fever which had persisted for three days.  (R. 233.)  Dr. Nagoshi prescribed antibiotics for Plaintiff's fever and medication for her headache.  (R. 233.) Plaintiff was instructed to follow up in a month. (R. 234.)

Plaintiff was seen by Dr. Nagoshi again on April 14, 2009.  (R. 231.)  On this visit, Plaintiff complained of insomnia, stating that her previous medication was no longer working for her.  (R. 231.)  She also complained of knee pain, and had gained weight since her last visit, admitting that she did not watch her diet "as carefully as she should," but reported that her headaches were controlled with her medication.  (R. 231.)

Plaintiff was next seen by Dr. Nagoshi a year later on April 13, 2010.  (R. 229.) Plaintiff reported that she had quit working, and now stayed at home because of her constant low back pain.  (R. 229.)  She reported that the Lortab was no longer working for her pain, and moving around made the pain worse.  (R. 229.)  Her medical record reflects that she was still being seen by Hematology for periodic iron infusions as treatment for her anemia, and her migraines were still well controlled by medication. (R. 229.)  However, due to her continued back pain, an MRI of her back was ordered.

(R. 230.)

The MRI was performed on April 30, 2010, and Plaintiff was examined by Dr. Keith Peters.  (R. 244-245.)   The MRI disclosed that her lumbosacral spine was in normal alignment, although she had diffuse disc degeneration, and degenerative changes were most prominent at L4-L5 where there was evidence of endplate sclerosis.  (R. 244.)  Dr. Peter's report also noted that the MRI was comparable with Plaintiff's previous MRI which was performed in March 2007.  (R. 244.)

Plaintiff returned to the Shands at UF Clinic on April 19, 2010 and was seen by Dr. Danielle Kim Panna for complaints of bilateral knee, hip, and left foot pain, which was generally worse on the right side.  (R. 227.)  Dr. Panna advised Plaintiff to follow up with an orthopedic surgeon for the possibility of an injection in her knee to treat her pain, and she was given a prescription for Tylenol #3.  (R. 227-28.)  Plaintiff returned to Dr. Panna on April 29, 2010 because the Tylenol #3 prescription was causing her side effects and she sought a different medication.  (R. 225.)  Dr. Panna told Plaintiff that it was crucial for her to attempt to lose weight, and gave her a different prescription for pain medication and a referral for pain management.  (R. 225-26.)

On June 24, 2010, Plaintiff was examined by Dr. Robert Spicer for her back and hip pain, and X-Rays were performed.  (R. 239-40.)   The X-Rays "showed no listhesis or obvious spinal osseous abnormalities."  (R. 240.)  Dr. Spicer noted that Plaintiff had previously tried physical therapy for her back pain, but had to stop after just two weeks because of pain.  (R. 240.)  He recommended that Plaintiff begin physical therapy to address her joint pain issues, and if that did not provide relief he would consider a joint

injection for her pain.  (R. 240.)

Plaintiff was examined by Dr. Maureen Noh at UF Orthopaedic Clinic on August 10, 2010, for her complaints of low back and hip pain.  (R. 246.)  Dr. Noh noted Plaintiff's history with obesity and recent diagnosis of uterine fibroids and menorrhagia. (R. 246.)  Dr. Noh reviewed Plaintiff's X-Rays and MRI and found that she appeared to have some degenerative disk disease most notable in the lower lumbar spine.  (R. 247.) Dr. Noh recommended that Plaintiff continue with the previously recommended physical therapy, and recommended that Plaintiff participate in pool exercises to increase her daily activity level.  (R. 247.)  Dr. Noh also discussed wearing supportive shoes, which she said would help with the burning sensation in Plaintiff's feet. Dr. Noh did not suggest any change in Plaintiff's medication, and she did not recommend an injection.  (R. 247-48.)

On August 22, 2010, Plaintiff was admitted to the emergency department of North Florida Regional Medical Center with complaints of a persistent headache and nausea.  (R. 286.)  Dr. Abhinav Prasad, the emergency room physician, noted that Plaintiff was also in acute renal failure, and ordered a consultation with neurology on account of her headache.  (R. 286.)  Plaintiff improved after hydration and was discharged.

On September 10, 2010, state agency physician April Hawkins, M.D., completed a physical RFC assessment of Plaintiff.  (R. 295-302.)  Dr. Hawkins opined that Plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently; sit, stand, and/or walk (with normal breaks) for at least two hours in an 8-hour workday; sit for about six

hours in an 8-hour workday; and could push and/or pull without limits other than as shown for her lift and carry limits.  (R. 296.)  Dr. Hawkins opined that Plaintiff should only occasionally climb ramps or stairs, should never climb ropes, ladders, or scaffolds, and could occasionally balance, stoop, kneel, crouch, or crawl.  (R. 297.)  No manipulative, communicative or visual limitations were established.  (R. 297-98.)  However, Dr. Hawkins opined that Plaintiff should avoid hazards such as machinery and heights.  (R. 299.)

Plaintiff returned to Dr. Noh on September 14, 2010 for her low back pain.  (R. 332.)  Dr. Noh again recommended that Plaintiff try pool therapy, and changed her pain medication prescription to gabapentin.  (R. 333.)  Plaintiff followed up with Dr. Noh on November 18, 2010.  (R. 326.)  Dr. Noh noted that Plaintiff still had not been able to undergo pool therapy despite her recommendation.  (R. 326.)  However, Plaintiff was wearing more supportive shoes, which helped her pain some, although it was still present.  (R. 326.)  Plaintiff reported that she was doing well on the gabapentin that Dr. Noh prescribed at her last visit.  (R. 326.)  Dr. Noh noted that Plaintiff had an upcoming surgery for her uterine fibroids and she recommended that Plaintiff follow up again after she had surgery. Dr. Noh did not recommend any immediate treatment.  (R. 327.)

Plaintiff was seen by Dr. Noh next on January 12, 2011 for her back pain.  (R. 319.)  During this visit, Plaintiff rated her pain as a 9-10/10, and Dr. Noh noted that "[w]e have tried to get her into physical therapy multiple times although she (sic) due to all other health issues has not been able to do this."  (R. 319.)  Because Plaintiff was unable to start therapy due to the pending surgery on her uterine fibroids, Dr. Noh gave

her two injections for her pain, which was well-tolerated and there was no bleeding.  (R. 320.)  Dr. Noh noted that she had improvement of her bilateral lateral hip pain after the procedure.  (R. 320.)

On November 11, 2010, state agency physician P.S. Krishnamurthy, M.D., completed a physical RFC assessment of Plaintiff.  (R. 303-310.)  Dr. Krishnamurthy opined that Plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently; sit, stand, and/or walk (with normal breaks) for about six hours in an 8-hour workday; sit for about six hours in an 8-hour workday; and could push and/or pull without limits other than as shown for her lift and carry limits.  (R. 304.)  Dr. Krishnamurthy opined that Plaintiff should only occasionally climb ramps, stairs, ropes, ladders, or scaffolds, and could frequrntly balance, and occasionally stoop, kneel, crouch, or crawl.  (R. 305.)  No manipulative, communicative or visual limitations were established.  (R. 306-307.)  However, Dr. Krishnamurthy opined that Plaintiff should avoid concentrated exposure to vibration and hazards such as machinery and heights.  (R. 307.)   Dr. Krishnamurthy found Plaintiff's symptoms only "partially credible," and noted that her morbid obesity was taken into consideration.  (R. 308.)

Plaintiff began treatment at Southeastern Rehabilitation on January 24, 2011 for pain management.  (R. 382.)  Dr. Oscar Depaz noted that Plaintiff had pain in her low back that radiated into her right leg, and her pain had gradually increased since 2007.  (R. 382.)  He noted that her pain became worse with sitting, standing, walking, driving, lifting, lying on her right side, bending, twisting, and coughing, and her symptoms included numbness, tingling, and weakness in various parts of her body.  (R. 382.)

However, Dr. Depaz also noted that Plaintiff was "in no acute distress," and had "[n]o obvious pain behaviors" and was overweight.  (R. 383.)  Dr. Depaz noted that Plaintiff "has had conservative treatment in the recent time period without results," and added a neuroleptic medication for her pain and decreased her Lortab use by half.  (R. 384.) Plaintiff returned to Dr. Depaz for a follow-up on February 22, 2011 and stated that she was feeling much better after being back on the pain medication, but continued to complain of neck pain, shoulder pain, and pain in her lower back that radiated to her right leg.  (R.308.)  Her pain medication prescription was renewed.  (R. 381.)

When Plaintiff returned to Dr. Depaz for a medication refill on March 24, 2011, she reported that she had tried to increase her activity level but became dizzy when she tried.  (R. 378.)  She was encouraged to do exercises even while sitting to help control her weight and her pain medication prescription was refilled.  (R. 379.)  Plaintiff returned again for a medication refill on April 21, 2011 and explained that she had a "tough" month pain wise.  (R. 376.)  She was seen for another medication refill on April 30, 2011 with complaints of continued wrist pain.  (R. 374)  Dr. Depaz noted that her wrist pain was consistent with carpal tunnel syndrome and refilled her medication.  (R. 375.)

Plaintiff's most recent medical record is from University of Florida Physicians Women's Health on May 24, 2011.  (R. 386.)  Dr. David Stewart noted that "Pt feels much better pelvic and back pain resolving on flexeril very happy."  (Sic.)

### B.    Hearing Testimony

Plaintiff was 44 years old at the time of the July 14, 2011 hearing.  She testified that she was not married but lived with her three children and an unrelated minor child.

(R. 44.)  She testified that she had a driver's license and could drive short distances, such as her appointments.  (R. 45.)  She traveled to the hearing in Ocala with her mother.  (R. 45.)

Plaintiff testified that she had completed high school and two years of vocational school.  (R. 45.)  She testified that she last worked in May 2008 at Micro Graphics, where she was a production manager.  (R. 45.)   In that position, she had to check in boxes and prepare them for shipping, which involved lifting boxes that weighed up to 50-70 pounds, and she managed other employees.  (R. 45-46.)  Plaintiff also worked for Perry Family Limited Partnership, where she cleaned empty apartments.  (R. 48.)

Plaintiff testified that she has not done any work since May 2, 2008.  (R. 48.)  She testified that she was not able to work because 95 percent of the time she was in her bed due to her pain and medications.  (R. 49.)

Plaintiff testified that she had not experienced relief from physical therapy, and had to stop it due to her pain.  (R. 49.)  She said that she had been watching her diet, and her pain medication did help her.  (R. 50.)  She testified that she received an injection for her pain, but it did not help. (R. 50.)

Plaintiff testified that she could not walk a half mile without help, and could only stand for ten minutes before she had sharp pain in her lower back and hip, and the bottom of her feet started burning.  (R. 52.)  She stated she could lift no more than about ten pounds.  (R.  52.)  She said that she could go grocery shopping, but only went to stores that had scooters she could use.  (R. 53.)  At home, she said her children did the housework, and that while she cooked "sometimes," her oldest soon

cooked "all the time."  (R. 53.)

A vocational expert (VE), Lorin Lovely, also testified at the hearing.  Mr. Lovely testified that Plaintiff's past work experience was as a small parts assembler, production manager, and a housecleaner.  (R. 55.)  The small parts assembler was light work with an SVP of 2.  (R. 55.)  The housecleaner position was light work with an SVP of 2.  (R. 55.)  The production manager position was light work with an SVP of 7.  (R. 55.)  However, as Plaintiff actually performed the position of production manager, it was more at a heavy level of work.  (R. 55-56.)

The ALJ posed a hypothetical to the VE assuming an individual with the same age, education and vocational background as Plaintiff, who was capable of light work with the following restrictions: only occasionally climb stairs, balance, stoop, kneel, and crouch, with a cane, and further never climb ropes, ladders, or scaffolds, and never crawl, and avoid concentrated exposure to vibrations and to hazards such as machinery and heights.  (R. 56.)  Based on the hypothetical, the VE testified that the individual would be able to perform Plaintiff's past relevant work of small parts assembler, but not house cleaner.  (R. 56.)  The VE also testified that such an individual could not perform the job of a production manager as Plaintiff actually performed it, but could perform the job as generally performed.  (R. 57.)

## VI.  DISCUSSION

Plaintiff argues that the ALJ failed to adequately developed the record; the ALJ erred in determining her RFC by affording "some weight" to the opinion of State Agency medical consultant Dr. Krishmamurthy; the ALJ erred by failing to make proper

credibility findings as to Plaintiff's testimony; and the ALJ's erred at Step 4 in finding

that Plaintiff has the ability to perform her past relevant work as a small parts

assembler, and production manager.

## A. The ALJ Adequately Developed the Record

It is well-settled that an ALJ has a basic obligation to fully and fairly develop the

record.[22]  This obligation exists whether or not a claimant is represented by counsel.[23]

As a hearing is non-adversarial in nature,[24] the duty to develop the record is triggered

when there is ambiguous evidence or when the record is inadequate to allow for proper

evaluation of the evidence.[25]

Plaintiff contends that the ALJ should have contacted Dr. Nagoshi, Plaintiff's

primary care provider for a function-by-function opinion on Plaintiff's limitations

stemming from Plaintiff's impairments.  However, neither Plaintiff nor her attorney

requested or suggested at the hearing that the ALJ contact Plaintiff's primary care

provider for a function-by-function opinion or any additional information.

In addition to the fact that no one suggested that the ALJ should re-contact Dr.

Nagoshi, the record does not support a conclusion that the ALJ should have contacted

Dr. Nagoshi for such an evaluation because comprehensive medical records were

already available to the ALJ.  Even if such an evaluation would have been required,

---

[22] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[23] Zaldivar, 81 F. Supp 2d at 1359.

[24] Id.

[25] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

Plaintiff's orthopaedist Dr. Noh, a specialist, would have been in a better position to complete such an evaluation regarding Plaintiff's physical limitations. The records from Dr. Noh were more than sufficient medical evidence for the ALJ to determine Plaintiff's functional limitations.

Plaintiff has made no showing that such an opinion by Dr. Nagoshi would be helpful or necessary.  The nature and extent of Plaintiff's limitations were referenced in the existing records from Plaintiff's physicians and addressed by the ALJ in his opinion, which contained a thorough review of Plaintiff's relevant medical records. Accordingly, the ALJ did not fail to adequately develop the record as Plaintiff suggests.

**B.  The ALJ's RFC is supported by substantial evidence**

The ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b)  (lifting no more than 20 pounds at a time and 10 pounds frequently) with the following limitations: only occasional postural motions including climbing stairs, balancing, stopping, kneeling, and crouching, and avoid crawling, climbing ladders, ropes, and scaffolds, concentrated exposure to vibration and hazards such as machinery and heights, and she must be allowed to use a cane.  (R. 28.)  In determining the RFC, the ALJ assigned "some" weight to the opinion of Dr. Krishnamurthy, a state agency reviewing physician.  Dr. Krishnamurthy opined that Plaintiff retained the capability to perform light work, with some limitations.

Plaintiff contends that the ALJ erred in determining the RFC by affording "some weight" to the opinion of Dr. Krishnamurthy because Dr. Krishnamurthy completed his assessment on November 11, 2010 and was therefore unable to consider Plaintiff's

treatment records after that date.  Those treatment records include at least two visits with Plaintiff's orthopedist Dr. Noh and Plaintiff's treatment records with Dr. Depaz at Southeastern Rehabilitation.  Second, Plaintiff contends that because the ALJ did not specifically state what weight was given to Dr. Nagoshi's statement that Plaintiff's symptoms were exacerbated by her work, the ALJ implicitly assigned greater weight to the opinion of a non-examining physician over that of a treating physician.

Although the ALJ did not specifically state what weight he assigned to the opinions of Plaintiff's treating physicians, he reviewed her medical records and discussed the records from Dr. Nagoshi, and Dr. Noh at length in his opinion.  (R. 29.) It is clear from the opinion that the ALJ did not rely exclusively on the opinion of Dr. Krishnamurthy, a state agency physician in formulating the RFC, but rather gave consideration to all of her medical records as discussed in his opinion.  The ALJ's RFC accounted for the fact that Plaintiff must use a cane, and her postural motions were also restricted.  The ALJ also considered the effect of Plaintiff's obesity on her condition. (R. 27-30.)  The ALJ noted that after a review of Plaintiff's medical records, none of Plaintiff's treating physicians opined that she had any disabling limitations.

Moreover, even though Dr. Krishnamurthy did not have the benefit of all of Plaintiff's medical records, he had available the necessary medical records to provide an informed opinion about Plaintiff's condition. Among the records he reviewed and relied upon were Dr. Noh's August 2010 medical records, the results of x-rays taken in June 2010 and an April 2010 MRI. The x-rays showed no obvious spinal abnormalities. The MRI of Plaintiff's lower spine evidenced only a mild disc protrusion without neural

impingement and notably showed no changes from her condition in 2007, a period of time when Plaintiff was working as a production manager lifting 50-70 pounds. Thus, Dr. Krishnamurthy had available to him sufficient medical information to provide an opinion and therefore his opinion was supported by the medical evidence and his reasons for reaching his opinions were well reasoned. The ALJ's partial reliance upon this opinion was not error and the ALJ did not, as suggested by Plaintiff, implicitly assign greater weight to the opinion of a non-examining physician over that of a treating physician.

For these reasons, the Court concludes that the ALJ did not err in assessing Plaintiff's residual functional capacity.

## C.  The ALJ properly assessed Plaintiff's credibility

As part of his credibility finding, the ALJ concluded that Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's determination of Plaintiff's residual functional capacity assessment.

In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit

and adequate reasons, and these reasons must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). A clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11ᵗʰ Cir. 1986).

The ALJ reviewed the evidence in the record and determined that it did not fully support Plaintiff's subjective complaints of constant pain and being bedridden for 95% of the time. The ALJ noted Plaintiff's past work history as a positive factor in the credibility analysis, but concluded that Plaintiff's subjective complaints of constant pain were inconsistent with the medical record as a whole, which evidenced that Plaintiff only received conservative treatment for her condition. The conservative treatment included some pain medications, such as Lortab and Tylenol #3, but only one injection. Notably, no doctor ever recommended surgery for Plaintiff's back problems. Plaintiff was encouraged to do pool exercises and pursue physical therapy, instructions with which she was consistently not compliant. The ALJ was entitled to rely upon Plaintiff's failure to follow the treatment regime recommended by her doctor. *See, McCall v. Bowen*, 846 F. 2d 1317, 1319 (11ᵗʰ Cir. 1988).

 Moreover, there is also no evidence in Plaintiff's medical records of the extreme fatigue that Plaintiff complained about and certainly no medical evidence suggesting that Plaintiff was required to remain bedridden for most of the time.

The ALJ's determination that Plaintiff's subjective complaints were not credible is further supported by Plaintiff's testimony regarding her activities of daily living. Plaintiff

testified that she could cook "sometimes," although her oldest soon cooked "all the time."  She further testified that she was able to drive short distances, and she could do the grocery shopping so long as an electric scooter was available.  (R. 45, 53.)  Thus, although the Plaintiff relies upon her children to assist with housework, she nonetheless, is sometimes able to cook, fold laundry and shop for groceries, activities that are inconsistent with Plaintiff's testimony that she can do very little and is bedridden a significant period of time.

The Court, therefore, concludes that the ALJ's evaluation of Plaintiff's credibility was proper and that the ALJ articulated specific reasons based upon substantial evidence as support for his credibility finding.

## D.  The ALJ's finding that Plaintiff could perform past relevant work is supported by substantial evidence

Lastly, Plaintiff argues that th ALJ erred at step four of the sequential evaluation because the ALJ posed an incomplete hypothetical to the VE. Additionally, Plaintiff argues that the ALJ erred by including house cleaner as past relevant work that Plaintiff could perform despite the fact the VE testified Plaintiff could not perform her past work as a house cleaner. Both arguments can be disposed of summarily.

First, with regard to the inclusion of house cleaner as past work Plaintiff could perform, there was an obvious typographical error in the heading in section 6 of the ALJ's opinion. In the heading to this section the ALJ included small parts assembler, production manager and house cleaner as past work that Plaintiff could perform. The discussion in section 6 of the ALJ's opinion, however, makes abundantly clear that Plaintiff could perform her past relevant work only as a small parts assembler as generally and actually performed and could perform her past relevant work as

production manager only as generally performed. The ALJ did not conclude that

Plaintiff could perform her past work as house cleaner. Thus, the inclusion of house

cleaner in the heading to section 6 is a best harmless error that does not reflect the

ALJ's specific finding as to the past relevant work that Plaintiff could perform.

Moreover, even assuming this was error, it makes no difference because so long

as the Plaintiff can perform at least one position in her past relevant work the Plaintiff

would not be considered disabled.

Secondly, with regard to Plaintiff's suggestion that the ALJ posed an incomplete

hypothetical to the VE, there is no merit to this argument. The record reflects that the

ALJ included in his hypothetical all of Plaintiff's limitations identified in Plaintiff's RFC,

including the limitation that Plaintiff was required to use a cane. The VE confirmed that

Plaintiff could perform her past relevant work as a small parts assembler and

production manager.  Based upon this testimony the ALJ properly concluded that

Plaintiff could perform her past relevant work as a small parts assembler as generally

and actually performed and could perform the job of production manager only as

generally performed.

Accordingly, the Court concludes that the ALJ did not err in finding that Plaintiff

was not disabled because his determination at step four that Plaintiff could perform past

relevant work is supported by substantial evidence.

## VII.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED**.

    **IN CHAMBERS** in Gainesville, Florida, on the 7th day of January 2014.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

    **Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**